**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

WILBER T.,

                 Plaintiff,

      v.                                 3:24-cv-1445
                                             (DJS)

FRANK BISIGNANO, _Acting Commissioner of_
_Social Security_,

                 Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

LACHMAN, GORTON LAW FIRM      PETER A. GORTON, ESQ.
Attorney for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13760-0089

U.S. SOCIAL SECURITY ADMIN.      MOLLY CARTER, ESQ.
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

### MEMORANDUM DECISION AND ORDER[1]

      Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a

decision by the Commissioner of Social Security that Plaintiff was not disabled.  Dkt.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this
District's General Order, this matter has been referred to the undersigned to exercise full

No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 13, 20, & 21.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1980.  Dkt. No. 12, Admin. Tr. ("Tr.") at p. 242.  He has an eleventh-grade education.  Tr. at pp. 49 & 247.  He has not worked in the last fifteen years.  Tr. at pp. 50 & 246.  In 2000, he worked as a laborer at a stone company and at a construction company, and as a stock clerk at a grocery store.  Tr. at p. 247.  Plaintiff alleges disability based on speech disorder, learning disability, and a broken back.  Tr. at pp. 68 & 246.

### B. Procedural History

Plaintiff applied for supplemental security income on August 2, 2021.  Tr. at p. 67.  He alleged a disability onset date of April 1, 1989.  *Id.*  Plaintiff's application was initially denied on August 16, 2021.  Tr. at p. 101.  Reconsideration was denied on May 24, 2022, Tr. at pp. 121-123, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. at pp. 138-140.  Plaintiff appeared at a hearing before ALJ Gretchen Greisler on May 31, 2023, at which Plaintiff and a vocational

---

jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Dkt. No. 6 & General Order 18.

expert testified.  Tr. at pp. 40-66.  On February 14, 2024, the ALJ issued a written decision finding Plaintiff was not disabled.  Tr. at pp. 22-34.  On October 10, 2024, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-7.

## C.  The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 2, 2021, the application date.  Tr. at p. 24.  Second, the ALJ determined that Plaintiff had the following severe impairments: lumbar spine disorder, umbilical hernia with status post-surgical repair May 9, 2023, personality disorder, learning disorder, and substance use disorder.  *Id.*  Third, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at p. 25.  Fourth, the ALJ found that Plaintiff has the residual functional capacity to perform work at the light exertional level except that he:

> he can occasionally stoop, balance, crouch, crawl, kneel and climb stairs and ramps but cannot climb ladders, ropes or scaffolds or work at unprotected heights or in close proximity to dangerous machinery. He can perform simple, repetitive tasks at a consistent, goal-oriented pace. He can engage in occasional interaction with coworkers and supervisors after learning job tasks from an informational and demonstrational lesson. He cannot engage in interaction with the public. He can make simple decisions and tolerate occasional work changes. He can perform work that does require close coordination of others or sharing of job tasks. The claimant cannot tolerate concentrated exposure to extreme temperatures, humidity, or respiratory irritants.

3

Tr. at p. 27.  Fifth, the ALJ found that Plaintiff has no past relevant work.  Tr. at p. 32.

Next, the ALJ found that transferability of job skills is not an issue because Plaintiff

does not have past relevant work.  *Id.*  The ALJ then determined that, based on Plaintiff's

age, education, work experience, and residual functional capacity, there are jobs that

exist in significant numbers in the national economy that Plaintiff can perform.  Tr. at

pp. 32-33.  The ALJ, therefore, concluded that Plaintiff is not disabled.  Tr. at p. 33.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health &*

*Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's

determination will be reversed only if the correct legal standards were not applied, or it

was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986

(2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied

correct legal principles, application of the substantial evidence standard to uphold a

finding of no disability creates an unacceptable risk that a claimant will be deprived of

the right to have her disability determination made according to the correct legal

principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v.*

*Califano*, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that

amounts to "more than a mere scintilla," and has been defined as "such relevant evidence

4

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B. Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential

evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff raises four claims of error for review in this proceeding. First, Plaintiff claims that the ALJ failed to consider the need for a sit/stand option. Dkt. No. 13, Pl.'s Mem. of Law at pp. 8-19. Second, Plaintiff claims that the ALJ erred in concluding that Plaintiff can meet the demands of light work, including staying on task or maintaining

attendance. *Id.* at pp. 19-21. Third, Plaintiff claims that the ALJ's social interaction limitations are not supported by substantial evidence. *Id.* at pp. 21-23. Finally, Plaintiff claims that the ALJ failed to include limitations to time off-task and attendance. *Id.* at 25. Defendant responds that the ALJ applied the correct legal standards and that the ALJ's findings are supported by substantial evidence. *See generally* Dkt. No. 20, Def.'s Mem. of Law.

### A. Whether the ALJ erred by rejecting the opinions of CRNP Cywinski and Dr. Gashinsky

Plaintiff argues that the ALJ improperly rejected the opinions of Certified Registered Nurse Practitioner ("CRNP") Cywinski and Doctor ("Dr.") Gashinsky. *See* Pl.'s Mem. of Law at pp. 9-10. With regard to CRNP Cywinski, Plaintiff first complains that it was error for the ALJ to find CRNP Cywinski's opinion to be inconsistent with the other objective evidence in the record because "it is entirely appropriate for a medical source to use subjective reports in forming a medical opinion." Pl.'s Mem. of Law at p. 12. Here, as a preliminary matter, Defendant correctly points out that the ALJ did not discount CRNP Cywinski's opinion as being improperly based on subjective reports. *See* Def.'s Mem. of Law at p. 9 n.4 (citing Tr. at p. 28). Further, the ALJ supported her finding that CRNP Cywinski's opinion was "not consistent with other objective evidence in the record" with substantial evidence, including from the orthopedic records and progress notes. Tr. at pp. 28-29.

Relatedly, Plaintiff asserts that it was "entirely appropriate for Dr. Gashinsky's opinion to take into account Plaintiff's subjective symptoms." Pl.'s Mem. of Law at p. 16. While an ALJ must "take the claimant's reports of pain and other limitations into account," the ALJ "is not required to accept the claimant's subjective complaints without question" and "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Woods v. Comm'r of Soc. Sec.*, 2025 WL 938639, at *1 (2d Cir. Mar. 26, 2025) (citations and quotations omitted); *see also Johnny S. v. O'Malley*, 2024 WL 3823487, at *7 (N.D.N.Y. Aug. 14, 2024) ("[A] reviewing court must uphold the ALJ's decision to discount a plaintiff's subjective complaints if substantial evidence supports that determination."). This is especially so where, as here, the plaintiff's testimony is "inconsistent with medical evidence and other evidence in the record." *Woods v. Comm'r of Soc. Sec.*, 2025 WL 938639, at *2. More specifically, the ALJ found that Dr. Gashinsky's opinion regarding Plaintiff's physical limitations was "based in part on [Plaintiff's] subjective complaints," which the ALJ reasonably noted was inconsistent with Plaintiff's orthopedic records and formal mental health treatment notes. Tr. at p. 30.

With regard to the ALJ's finding that CRNP Cywinski's opinion was inconsistent with Plaintiff's limited treatment, Plaintiff: (i) relies on *Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000) to argue that it is improper for an ALJ to find that "the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered"; (ii) notes that Plaintiff "failed conservative treatment and . . . was

8

recommended for more invasive treatment, including injections and . . . surgery"; and (iii) claims "it is error for the ALJ to draw negative inferences about what treatment Plaintiff received in light of his low IQ and poor judgment."  Pl.'s Mem. of Law at p. 14.

However, here, unlike in *Shaw*, the ALJ did not evaluate whether any medical treatment that was ordered for Plaintiff correlated with the severity of Plaintiff's impairment.  Instead, the ALJ properly considered whether CRNP Cywinski's opinion regarding Plaintiff's limitations was consistent with the treatment that Plaintiff received. *See Rushford v. Kijakazi*, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023) (instructing that ALJs are "to consider the submitted medical opinions based on several factors," with one of the most important factors being "consistency"); *see also Johnny S. v. O'Malley*, 2024 WL 3823487, at *8 (stating that "[t]he ALJ may discount plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and [claimant's] own activities during the relevant period").  Regardless, as the ALJ noted, "[p]ain management records . . . indicated that [Plaintiff] declined injections, physical therapy, and chiropractic care," Tr. at p. 30, and it would be reasonable for the ALJ to find that Plaintiff's "failure to seek or maintain regular medical treatment suggests [that Plaintiff's] symptoms and limitations may not be as severe as alleged," *Johnny S. v. O'Malley*, 2024 WL 3823487, at *8.  There is also no evidence to suggest, as Plaintiff now claims, that Plaintiff decided not to pursue certain treatment methods available to him based on his low IQ or poor judgment.

9

Plaintiff draws attention to the fact that the ALJ references "progress notes from April 2023" that Plaintiff claims were actually from November 2021. *See* Pl.'s Mem. of Law at p. 13. However, the ALJ's misstatement of the date of the progress notes does not amount to reversible error here. As Plaintiff himself points out, the ALJ simply referenced the "print date/time" rather than the "treatment date." *Id.* at p. 13 n.4. Moreover, the progress notes are referenced by the ALJ for the purpose of discussing the objective evidence contained in the record, and the date of the progress notes is immaterial to that point. *See* Tr. at p. 28. Regardless, as previously discussed, the ALJ provided other evidence illustrating how CRNP Cywinski's opinion was not consistent with the other objective evidence in the record, including by referencing orthopedic records. *See supra* at p. 7; Tr. at p. 28. As such, any misstatement of the date of the progress notes does not provide a basis for remand here. *See, e.g.*, *Burkey v. Colvin*, 284 F. Supp. 3d 420, 422 n.1 (W.D.N.Y. 2018) (affirming despite the fact that "[t]he ALJ's decision contain[ed] a typographical error, describing the amended onset date as December 1, 2014—which would postdate the decision itself"); *Rachel G. v. Comm'r of Soc. Sec.*, 2021 WL 4820640, at *2 n.3 (W.D.N.Y. Oct. 15, 2021) (affirming despite the fact that "the ALJ cited the incorrect amended alleged onset date . . . but throughout the remainder of the decision it [wa]s clear that he correctly referenced the amended alleged onset date of March 30, 2007").

Turning to Dr. Gashinsky, Plaintiff claims that the ALJ limited her evaluation to the face of the document containing Dr. Gashinsky's opinion, but that argument is

directly contradicted by the ALJ's opinion, which references Plaintiff's treatment notes, orthopedic records, and formal mental health treatment notes. *See* Tr. at p. 30 (citing Tr. at pp. 529, 531, 539, 561, 570, 574, 577, 591, 601, 602, & 604).

Plaintiff also takes issue with the ALJ's statement that the diagnostic imaging Dr. Gashinsky relied upon "references only 'multi-level mild to moderate disc disease,'" and claims that "the imaging showed far more serious findings." Pl.'s Mem. of Law at p. 16 (quoting Tr. at p. 30). However, Dr. Gashinsky herself characterized the MRI as showing only mild to moderate disc disease. *See* Tr. at p. 613.

Plaintiff claims that "[t]he ALJ was required to compare Dr. Gashinsky's opinion with the entire record (not just Dr. Gashinsky's own records) to properly assess the consistency factor," and argues that the ALJ "only compare[d] Gashinsky's opinion to the negative orthopedic findings . . . and le[ft] out all the positive ones." Pl.'s Mem. of Law at p. 18. However, similar to *Seth M. D. v. Comm'r of Soc. Sec.*, where the plaintiff complained that the ALJ "cherry-picked only the positive findings" while "ignor[ing] the negative findings" and "failed to address the supportability and consistency factors," 2024 WL 1130381, at *4 & 7 (W.D.N.Y. Mar. 15, 2024), the ALJ's decision demonstrates that she considered the consistency and supportability factors.

For example, while discussing the "significant physical and mental limitations" opined by Dr. Gashinsky, the ALJ noted that Dr. Gashinsky's opinion was "inconsistent with the dearth of formal mental health treatment notes in [the] record." Tr. at p. 30. The ALJ also noted that Dr. Gashinsky's opinion was "inconsistent with orthopedic

11

records." *Id.* As in *Seth M. D. v. Comm'r of Soc. Sec.*, the ALJ's citations to the record, as well as her use of the word "inconsistent," indicate that the ALJ considered whether Dr. Gashinsky's opinion was consistent with the record. Further, in her discussion of Dr. Kim, Dr. Abueg, and CRNP Cywinski's opinions, the ALJ referenced the same orthopedic records and physical examinations cited by the ALJ in her discussion of Dr. Gashinsky's opinion—namely, that Plaintiff "ambulated without difficult without any assistive device, motor strength was full in the upper and lower extremities except 4/5 in the right ankle, reflexes were intact, and range of motion was intact in the lower extremities." Tr. at pp. 28-30.

Plaintiff's argument that the ALJ improperly substituted her lay judgment for that of competent medical opinion similarly fails. *See* Pl.'s Mem. of Law at p. 12; *see also* Pl.'s Mem. of Law at p. 13 ("[T]he ALJ's lay assessment is not enough to overcome this expert medical opinion."). "Although an ALJ is not permitted to substitute [her] own expertise or view of the medical proof for the treating physician's opinion, an ALJ is free . . . to choose between properly submitted medical opinions," *Tibbles v. Comm'r of Soc. Sec.*, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023) (quotations omitted), which is precisely what the ALJ did here. Rather than substituting her own opinion for that of a medical expert, the ALJ properly evaluated the medical reports rendered by the medical experts for supportability and consistency. *See generally* Tr. at pp. 28-32.

**B. Whether the ALJ erred by not addressing the sit/stand option**

Plaintiff additionally argues that the ALJ did not address the frequency of Plaintiff's need to change positions. *See* Pl.'s Mem. of Law at p. 9. Relatedly, Plaintiff claims that the ALJ did not address CRNP Cywinski and Dr. Gashinsky's opinions that Plaintiff would need to change positions every thirty minutes. *See id.*

Initially, the Court notes that Plaintiff only asserts that the opinions of CRNP Cywinski and Dr. Gashinsky discussed Plaintiff's "need to change positions every [thirty] minutes." *Id.* Plaintiff does not allege that any other medical experts discussed Plaintiff's need to change positions. *See generally id.* As previously explained, the ALJ properly evaluated the opinions of CRNP Cywinski and Dr. Gashinsky and determined that these opinions were not persuasive. *See supra* at pp. 7-13; *see* Tr. at pp. 28 & 30.

With regard to CRNP Cywinski, the ALJ notably stated that she was not persuaded by CRNP Cywinski's opinion that Plaintiff had "limitations for sitting, standing, and walking" because "during the consultative evaluation, [CRNP Cywinski] noted that [Plaintiff] had full strength in the extremities, no sensory deficits present, physiological and equal deep tendon reflexes in the extremities, and no muscle atrophy evident." Tr. at p. 28. Further, the ALJ found that CRNP Cywinski's opinion was "not consistent with the other objective evidence in the record," including the orthopedic records, which "indicated that [Plaintiff] ambulated without difficulty without an assistive device, range of motion was intact in the lower extremities, motor strength was

13

5/5 in the lower extremities except 4/5 in the right lower extremity, and reflexes were intact." *Id.*

Additionally, with regard to Dr. Gashinsky, the ALJ stated that she was not persuaded by Dr. Gashinsky's opinion that Plaintiff had "significant physical . . . limitations" because this opinion was "not supported by any objective evidence" and was "based in part on [Plaintiff's] subjective complaints."  Tr. at p. 30. The ALJ also explained that Plaintiff's diagnostic image, which referenced only multi-level mild to moderate disc disease, suggested "some physical limitations but [was] not consistent with the degree of restrictions" identified by Dr. Gashinsky.  *Id.*  Likewise, the ALJ found "Dr. Gashinsky's opinion . . . inconsistent with orthopedic records indicating that [Plaintiff] ambulated without difficulty without any assistive device, motor strength was full in the upper and lower extremities except 4/5 in the right ankle, reflexes were intact, and range of motion was intact in the lower extremities." *Id.*  Based on the foregoing, there was no need for the ALJ to further discuss the portions of CRNP Cywinski and Dr. Gashinsky's opinions asserting that Plaintiff would need to change positions every thirty minutes.

Regardless, even assuming *arguendo* that the ALJ did not explicitly address the frequency of Plaintiff's need to change positions or the portions of CRNP Cywinski and Dr. Gashinsky's opinions asserting that Plaintiff would need to change positions every thirty minutes, the Court finds that any such error on the ALJ's part is harmless and thereby does not warrant remand.  *See Leonard S. v. Saul*, 2021 WL 514276, at *4

(W.D.N.Y. Feb. 11, 2021); *Yeomas v. Berryhill*, 305 F. Supp. 3d 464, 467-68 (W.D.N.Y. 2018). At the hearing, the vocational expert testified that Plaintiff would be able to perform the requirements of the occupations of "marker" and "mail clerk." *See* Tr. at p. 33. Vocational experts in other cases have repeatedly found that both of these positions can be performed by persons requiring the option to change position between sitting and standing at will. *See Leonard S. v. Saul*, 2021 WL 514276, at *4 (citing cases). As such, "plaintiff could perform either position regardless of whether the ALJ had included a sit/stand option," and "remand to consider that issue further would serve no useful purpose." *Yeomas v. Berryhill*, 305 F. Supp. 3d at 468.

### C. Whether the ALJ erred by concluding that Plaintiff can meet the demands of light work, including staying on task or maintaining attendance

Plaintiff also argues that the ALJ committed error by relying on the "opinions of the two non-examining state agency medical consultants, Kim and Abueg," to find that Plaintiff can meet the demands of light work. *See* Pl.'s Mem. of Law at p. 19. Plaintiff asserts that the opinions of Dr. Kim and Dr. Abueg are not supported by their own medical summaries. *See id.* at pp. 19-20. Additionally, Plaintiff claims that the opinions of Dr. Kim and Dr. Abueg are inconsistent with the opinions of Plaintiff's treating physician, CRNP Cywinski, and Plaintiff's consultant, Dr. Gashinsky, both of whom examined Plaintiff. *See id.*

At heart, Plaintiff appears to simply take issue with "how the ALJ resolved conflicts in the record." *Rushford v. Kijakazi*, 2023 WL 8946622, at *3. An ALJ may

give greater weight to the report of a non-examining state agency medical consultant than to that of a treating physician. *See Tibbles v. Comm'r of Soc. Sec.*, 2023 WL 3477127, at *2. "Indeed, under the Social Security Administration's latest regulations, which apply because [Plaintiff] filed [his] claim for benefits after March 27, 2017, no special deference is given to the opinion of the treating physician." *Id.* (citation omitted). Instead, ALJs are "to consider the submitted medical opinions based on several factors set forth in the regulations and to explain how the two most important factors – supportability and consistency – applied to each opinion." *Rushford v. Kijakazi*, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023) (quotations omitted).

Here, the ALJ did precisely that. *See generally* Tr. at pp. 28-30. The ALJ went into detail explaining that she was "not persuaded" by CRNP Cywinski's opinion because it was "neither supported by her own evaluation of [Plaintiff], nor . . . consistent with the other evidence in the record." Tr. at p. 28. Likewise, the ALJ thoroughly explained that she was "not persuaded" by Dr. Gashinsky's opinion because the significant limitations outlined by Dr. Gashinsky were not supported by any objective evidence and the opinion was inconsistent with both orthopedic records and mental health treatment notes. Tr. at p. 30. On the other hand, the ALJ was persuaded by Dr. Kim and Dr. Abueg's assessments because they were "supported by detailed narrative rationales, which cite[d] supporting objective medical evidence and other evidence from the record." Tr. at p. 28. Additionally, the ALJ stated that the findings rendered by Dr. Kim and Dr. Abueg "are also consistent with the limited treatment pursued by [Plaintiff]

16

during the period at issue, and the physical examinations." *Id.*

Plaintiff also contends that the ALJ erred by "not[ing] that Plaintiff advised that he felt great after taking Hydrocodone and Diazepam" because "those were one-time prescriptions" and thus, according to Plaintiff, are "irrelevant to Plaintiff's residual functioning." Pl.'s Mem. of Law at p. 21. However, this evidence bears on the issue of whether Plaintiff's medications helped to control Plaintiff's symptoms. *See e.g. Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (noting that petitioner's condition improved with medication); *Withus v. Saul*, 2019 WL 6906972, at *13 (S.D.N.Y. Dec. 19, 2019), *report and recommendation adopted*, 2021 WL 2012270 (S.D.N.Y. May 19, 2021) (finding that substantial evidence supported the ALJ's conclusion that "[plaintiff] responded positively to medications" and concluding that the record thereby "demonstrate[d] that the ALJ relied on substantial evidence in his determination that [plaintiff] did not suffer from extreme limitations in functioning"). Notably, the record reflects that, not only did Plaintiff advise that his pain had decreased when taking these medications, but further Plaintiff stated that "he is able to move without any difficulty and able to mow his lawn." Tr. at p. 554. As such, the ALJ properly considered this evidence in forming her decision.

### D. Whether substantial evidence supports the ALJ's social interaction limitations

Plaintiff argues that the ALJ also erred because "[t]he ALJ's social interaction limitations are not supported by substantial evidence." Pl.'s Mem. of Law at p. 21. In

support of this argument, Plaintiff claims that "the ALJ relies on the reports of the [non-examining state psychologists]," and notes that "the Circuit has stated that ALJ should not rely heavily on these reports." *Id.* Plaintiff further argues that these opinions are "incompetent" and "inconsistent with the longitudinal evidence." *Id.* at p. 22.

As previously explained, "no special deference is given to the opinion of the treating physician" and an ALJ may give greater weight to the report of a non-examining state agency medical consultant than to that of a treating physician. *Tibbles v. Comm'r of Soc. Sec.*, 2023 WL 3477127, at *2 (citations omitted); *see supra* at p. 16. This is especially so where, as here, the opinions are supported by substantial evidence in the record.

As noted by the ALJ, Dr. Kamin's opinion was "supported by a detailed narrative rationale, which cite[d] supporting objective medical evidence and other evidence from the record," and was "also consistent with the dearth of formal mental health treatment notes" and "mental status examinations in record." Tr. at p. 29. Likewise, the ALJ found "Dr. Fretz's opinion . . . supported by a review of the record available at the time of the initial level . . . and . . . consistent with the dearth of formal mental health treatment notes in record." *Id.* The ALJ also stated that "[t]he portions of Dr. Bett's opinion which assign moderate limitations on [Plaintiff's] ability to perform work-related mental activities [we]re supported by Dr. Bett's own mental statute examination findings" and were "consistent with the record as a whole." *Id.* The ALJ's social interaction limitations were, accordingly, supported by substantial evidence.

18

### E. Whether the ALJ erred in her evaluation of
### Plaintiff's time off-task and attendance

Finally, Plaintiff briefly argues that the ALJ erred by "not meaningfully engag[ing]" with the portion of Dr. Gashinsky's opinion that states that "Plaintiff would be off-task and absent at levels that . . . would not permit her [sic] to sustain employment." Pl.'s Mem. of Law at p. 25 (citing Tr. at p. 63). Plaintiff claims that this opinion is "supported by the combination of Plaintiff's chronic back pain, low IQ, anxiety, and history of poor attention and concentration and acting out." *Id.* On the other hand, Defendant asserts that "[t]he ALJ's finding that Dr. Gashinsky's opinion was unpersuasive encompasses the checked boxes indicating that Plaintiff's symptoms would lead him to be off task more than 33% of the time and absent more than four days per month." Def.'s Mem. of Law at p. 13 (citing Tr. at pp. 611-12).

The ALJ was not required to "explain the weight afforded to every issue discussed in a treating physician's opinion." *Bennett v. Comm'r of Soc. Sec.*, 2023 WL 355156, at *3 (2d Cir. Jan. 23, 2023) (citation omitted). Regardless, the ALJ sufficiently explained that she was not persuaded by Dr. Gashinsky's opinion because "the significant physical and mental limitations she outlined are not supported by any objective evidence," "her mental assessment . . . references [Plaintiff's] pain and mental health disorder without any objective findings to support the degree of restrictions," and "[h]er treatment notes reference normal mental status evaluations" and "noted that [Plaintiff] denied carrying any psychiatric diagnosis . . . and . . . denied experiencing

any psychological symptoms." Tr. at p. 30. The ALJ also found "Dr. Gashinsky's opinion . . . inconsistent with the dearth of formal mental health treatment notes in record during the period at issue." *Id.*

Because the ALJ was not obligated to explain every issue discussed in Dr. Gashinsky's opinion and because the ALJ's finding that Dr. Gashinsky's opinion was not persuasive was supported by substantial evidence, the ALJ did not err by not explicitly discussing the portion of Dr. Gashinsky's opinion regarding Plaintiff's time off-task and attendance.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED** and the Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-

Decision and Order on the parties.

Dated:  January 5, 2026
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

21